# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

*People v. One 1998 GMC*, 2011 IL 110236

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ONE 1998 GMC *et al.*, Appellees. |
| | |
| Docket No. | 110236 |
| Filed | December 30, 2011 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Statutory forfeiture procedures against multiple owners of vehicles involved in DUI arrests provided all the process which was due, and rulings of facial unconstitutionality for failure to require prompt pretrial hearings on probable cause were reversed. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, the Hon. Thomas C. Dudgeon, Judge, presiding. |
| | |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Robert Berlin, State's Attorney, of Wheaton (Michael A. Scodro, Solicitor General, and Michael M. Glick and Eldad Z. Malamuth, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| | |
| | Donald J. Ramsell, of Wheaton, for appellees. |
| | |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Garman and Theis concurred in the judgment and opinion. |
| | Justice Karmeier specially concurred, with opinion. |
| | Justice Freeman dissented, with opinion, joined by Justice Burke. |

## OPINION

¶ 1    The issue presented in this case is whether the vehicle-forfeiture provisions of the Criminal Code of 1961 (the Criminal Code) (720 ILCS 5/36-1 through 36-4 (West 2006)) are facially unconstitutional as a violation of procedural due process because they do not include a provision requiring a prompt, probable cause hearing after the seizure of a vehicle. We find that the forfeiture proceeding itself provides all the process that is due in such cases, and therefore find no constitutional defect in the statute.

¶ 2                                    BACKGROUND

¶ 3    This case involves an appeal from three vehicle forfeiture proceedings brought by the State in the circuit court of Du Page County. The same attorney represented the claimants who sought return of their vehicles in all three cases. In No. 07-MR-1126, Wheaton police seized a 1998 GMC on July 24, 2007. The Du Page County sheriff was notified of the seizure on August 3, 2007, and the sheriff in turn sent notice by certified mail on August 7, 2007, to all persons having an interest in the vehicle. On August 15, 2007, the State filed a complaint for forfeiture of the vehicle, stating that the owners were George Reardon and Reardon Painting, which both had the same address in Winfield, Illinois. The complaint also listed the vehicle identification number (VIN) and alleged that George Reardon used the 1998 GMC prior to the seizure to commit the offense of driving while license revoked or suspended (625 ILCS 5/6-303(a) (West 2006)), at a time when his driver's license or privilege to operate a motor vehicle was suspended or revoked for a violation of either section 11-501.1 or 11-501 of the Illinois Vehicle Code or a similar provision of a local

ordinance.[1] The day before the forfeiture complaint was filed, a grand jury indicted George Reardon in Du Page County on two felony charges based on his conduct prior to the seizure: aggravated driving under the influence of alcohol (aggravated DUI) and driving while license revoked (DWLR) (625 ILCS 5/6-303(d) (West 2006)). As required by statute, the State sent notice of the filing of the forfeiture complaint by certified mail on August 16, 2007. The notice informed the owners that they had 20 days from the mailing of the notice to file a verified answer if they wished to contest the action. See 720 ILCS 5/36-2(a) (West 2006).

¶ 4    George Reardon did not contest the State's complaint within the 20-day period, but Linda Reardon, secretary of Reardon Painting, Inc., filed a timely, verified answer on September 6, 2007. Thereafter, Linda's attorney sought and was granted continuances in the case on December 12, 2007, and January 17, 2008. On May 13, 2008, the case was again continued on Linda's motion, this time until August 1, 2008, to "track the underlying criminal case." On August 1, 2008, the court again continued the case at Linda's request, but in this instance it was to allow her to file a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619 (West 2006)) and to allow the parties time to brief the issues that would arise from her motion. On September 11, 2008, a section 2-619 motion to dismiss was filed, listing "George Reardon" as the claimant and arguing that the forfeiture provisions of the Code were unconstitutional. The case was set for a hearing to be held October 15, 2008, but further delay resulted from the court giving Linda Reardon's attorney time to file amended pleadings. Then, on November 10, 2008, an amended motion was filed listing "George Reardon, Linda Reardon, and Reardon Painting, Inc.," as claimants. The text of the amended motion, however, stated that the "claimant herein is Linda Reardon and Reardon Painting, Inc." The trial court heard argument on the motion on February 18, 2009, and March 24, 2009. The court ordered that the amended motion itself be "amended to reflect that the claimant's name is 'Linda Reardon, Secretary of Reardon Painting Inc.,' and not George Reardon." On March 30, 2009, the court ordered additional briefing, with which the parties complied. Multiple hearings were then held and the case was consolidated for a ruling with the other two cases discussed below.

¶ 5    In No. 08-MR-1320, Carol Stream police seized a 1996 Chevrolet on August 8, 2008, and notified the Du Page County sheriff of the seizure on August 18, 2008. The sheriff then sent notice of the seizure to all persons having an interest in the vehicle. On August 28, 2008, the State filed a two-count complaint seeking forfeiture of the 1996 Chevrolet, listing Michael S. Adams, Jessica S. Adams, and PGL CC Employees Credit Union as the owners or parties of interest in the vehicle. The complaint also set forth the vehicle's VIN. Count I

---

[1]Section 11-501 of the Illinois Vehicle Code (Vehicle Code) prohibits driving under the influence of drugs or alcohol (DUI) and prescribes various penalties. See 625 ILCS 5/11-501 (West 2006). Section 11-501.1 is the procedure for a statutory summary suspension of a driver's license related to DUI. The State's complaint for forfeiture with respect to George Reardon alleges a violation of section 6-303(a) of the Vehicle Code (625 ILCS 5/6-303(a) (West 2006)). The forfeiture statute, along with section 6-303(g) of the Vehicle Code, makes clear that a seizure and forfeiture is allowed for the conduct as alleged in the State's forfeiture complaint pertaining to George. See 720 ILCS 5/36-1 (West 2006); 625 ILCS 5/6-303(c), (g) (West 2006).

alleged that prior to the seizure on August 8, 2008, the vehicle was used in the commission of the offense of aggravated DUI (625 ILCS 5/11-501(d)(1)(A) (West 2006)), "in that the vehicle was operated by Michael S. Adams while under the influence of alcohol, the defendant having at least two prior violations of driving under the influence," in violation of section 11-501, or a similar provision of a local ordinance. Count II alleged that prior to the seizure on August 8, 2008, the vehicle was used in the commission of the offense of aggravated DUI (625 ILCS 5/11-501(d)(1)(H) (West 2006)), in that the vehicle was operated by Michael Adams when he knew or should have known that the vehicle he was driving was not covered by a liability insurance policy. Michael Adams was also indicted by a Du Page County grand jury of two counts of aggravated DUI stemming from the incident.

¶ 6        The State sent the statutory notice of the filing of the forfeiture complaint on September 4, 2008, to the three potential interest holders. On September 24, 2008, Michael Adams filed a verified answer to the complaint. The answer did not challenge the constitutionality of the forfeiture statute. However, about two months later, on December 30, 2008, Michael filed a motion seeking to declare the statute unconstitutional and return of the seized 1996 Chevrolet. Thereafter, additional briefing was requested, and as noted previously, the case was eventually consolidated with the other two for a ruling on the constitutional challenge.

¶ 7        In No. 08-MR-1614, the Illinois State police seized a 2002 Chevrolet in Du Page County on October 4, 2008. The Du Page County sheriff was notified of the seizure on October 8, 2008, and certified mail notice of the seizure was sent to all persons having an interest in the seizure on that same date. On October 14, 2008, the State filed a two-count forfeiture complaint against the 2002 Chevrolet, listing the VIN and stating that the owners or parties of interest were Robert K. Messina, Mary Jo Messina and Wells Fargo Auto Finance. Count I alleged that prior to the seizure, the vehicle was used in the commission of the offense of aggravated DUI (625 ILCS 5/11-501(d)(1)(A) (West 2006)), in that the vehicle was operated by Robert Messina while under the influence of alcohol, at a time when he had at least two prior violations for DUI in violation of section 11-501 of the Vehicle Code, or a similar provision of a local ordinance. Count II alleged that prior to the seizure, the vehicle was used in the commission of the offense of aggravated DUI (625 ILCS 5/11-501(d)(1)(H) (West 2006)), in that the vehicle was operated by Robert Messina while under the influence of alcohol at a time when he knew or should have known that the vehicle he was driving was not covered by a liability insurance policy. A Du Page County grand jury eventually indicted Robert Messina on two counts of aggravated DUI based on the event. On October 14, 2008, the State sent the required certified mail notice of the forfeiture complaint to the three interest holders. On October 21, 2008, Robert Messina filed a verified answer. The answer did not challenge the constitutionality of the Act. But in January 2009, Robert filed a motion to declare the vehicle forfeiture provisions of the Code unconstitutional. Further briefing was ordered and, again, the case was consolidated with the others for a ruling.

¶ 8        The trial court rendered a written decision on the consolidated case on November 17, 2009. The court found that the statutory forfeiture provisions were facially unconstitutional, determining that they violated the due process clauses of the Illinois Constitution and the fifth and fourteenth amendments of the United States Constitution. The court applied the three-part test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and relied heavily upon *United*

*States v. James Daniel Good Real Property*, 510 U.S. 43 (1993), and *Krimstock v. Kelly*, 306 F.3d 40 (2d Dist. 2002), to rule that due process required that the statute contain a provision for a prompt, probable cause hearing postseizure to allow claimants to test the State's right to retain their vehicles while they await trial on the merits of the forfeiture action. The court also found that due process required that the State assume the burden of proof at the probable cause hearing to "demonstrate the non-criminally charged owner's 'guilt' to justify holding the vehicle in the first place." Finally, the court determined that the appropriate remedy here was to dismiss each of the forfeiture complaints with prejudice. It concluded that this judgment could not rest on any alternative grounds.

¶ 9 On December 16, 2009, the State filed a motion to reconsider the trial court's decision, raising a number of arguments. In a written decision entered March 12, 2010, the trial court rejected each of the State's arguments and denied the motion to reconsider. In doing so, the court first addressed the State's contention that dismissal of its forfeiture complaints was not proper under section 2-619(a)(9) because the failure to provide a probable cause hearing was not an "affirmative matter avoiding the legal effect of or defeating the claim" within the meaning of that section. See 735 ILCS 5/2-619(a)(9) (West 2006). The court disagreed, finding that the State's right to forfeiture was based entirely upon the statute, and the lack of a probable cause hearing rendered the statute a nullity and incapable of being enforced. The court then rejected the State's second contention that there were other remedies short of dismissal. It stated that this was not a case where a part of the statute could be severed or ignored to save the remainder of the legislation. Rather, the defect in the statute was due to something the legislation lacked, namely, a probable cause hearing. In the court's view, the statute could not be saved by simply providing a probable cause hearing because to do so would be to rewrite the legislation and create a legislative scheme that may or may not be in accord with the wishes of the General Assembly. The court next addressed the contention that it erred in finding that the State would be required to show, at a probable cause hearing, that *all* of the owners of the seized vehicle were to some extent culpable for the crime that gave rise to the vehicle's seizure before the State could continue to hold the vehicle pending the outcome of the forfeiture proceeding. The court acknowledged the State's reliance on *Bennis v. Michigan*, 516 U.S. 442, 446 (1996), which observed that "a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use." But the court found *Bennis* "irrelevant" in light of differences between the present statute and the Michigan statute involved in *Bennis*.

¶ 10 Following the denial of its motion to reconsider, the State properly appealed directly to this court as a matter of right. See Ill. S. Ct. R. 603 (eff. Oct. 1, 2010). The day after the State filed its notice of appeal, the Appellate Court, Second District, decided another set of consolidated forfeiture cases involving the same basic argument regarding the constitutionality of the forfeiture provisions at issue here. See *People v. 1998 Ford Explorer*, 399 Ill. App. 3d 99 (2010). In *1998 Ford Explorer*, the appellate court rejected the argument that the provisions were unconstitutional as applied because they did not provide for a prompt, probable cause hearing. The appellate court relied upon *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555

(1983), and *United States v. Von Neumann*, 474 U.S. 242 (1986), to hold that the forfeiture proceedings themselves comported with due process so that no additional procedures were required. *1998 Ford Explorer*, 399 Ill. App. 3d at 102. The holding in *1998 Ford Explorer* was followed by the Illinois Appellate Court in *People v. Lexus GS 300*, 402 Ill. App. 3d 462, 467 (1st Dist. 2010) (State may seize property subject to forfeiture under the forfeiture provisions of section 36-1 of the Criminal Code (720 ILCS 5/36-1 *et seq.* (West 2002)) without a preseizure hearing), and *People v. 1996 Honda Accord*, 404 Ill. App. 3d 174, 175 (2d Dist. 2010) (held that similar provisions of the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 *et seq.* (West 2008)), and the Cannabis Control Act (720 ILCS 550/12 (West 2008)) did not violate due process simply because they did not provide for a prompt, probable cause hearing). We now consider the constitutionality of the vehicle forfeiture provisions at issue.

¶ 11                                                    ANALYSIS
¶ 12                        I. Propriety of Section 2-619 Motion to Attack Constitutionality
¶ 13         At the outset, we express our agreement with the trial court's determination that it was necessary to reach the constitutional question presented. The State suggests that a motion to dismiss brought pursuant to section 2-619(a)(9) can never be a proper vehicle to attack the constitutionality of a statute. We believe, however, that the State is mistaken that the constitutional question should not be reached under the circumstances here. Section 2-619(a)(9) allows for dismissal of an action on the ground that "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010). It is claimants' contention that the forfeiture statute is facially unconstitutional because it does not provide an early opportunity for a probable cause hearing to test the validity of the seizure pending the outcome of the forfeiture proceeding. Claimants assert that this is an affirmative matter which would defeat the State's claim to forfeiture because if they are correct that the Constitution requires a probable cause hearing, the statute would be declared a nullity and void *ab initio* and the vehicles would be ordered immediately returned to claimants. See, *e.g.*, *People v. Wright*, 194 Ill. 2d 1, 24 (2000); *People ex rel. Sklodowski v. Illinois*, 162 Ill. 2d 117, 136 (1994) (Freeman, J., concurring in part and dissenting in part, joined by Harrison, J.) ("legislation unconstitutional on its face is void, not merely voidable"); *In re Contest of the Election for the Offices of Governor & Lieutenant Governor Held at the General Election on November 2, 1982*, 93 Ill. 2d 463, 471 (1983). The State counters by contending that even if due process is violated by the failure of the statute to provide for a probable cause hearing, the appropriate remedy would not be dismissal of the forfeiture action, but rather for this court to order that a probable cause hearing be conducted. We disagree with the State. The trial court correctly found that to fashion the remedy suggested by the State would require the court to significantly rewrite the legislation. The rule is well settled in Illinois that our state courts may not rewrite legislation to avoid constitutional issues or create a remedy for a constitutional violation. *City of Urbana v. Andrew N.B.*, 211 Ill. 2d 456, 477 (2004); see also *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 510 (2006); *In re Branning*, 285 Ill. App. 3d 405, 410 (1996) (rule of construing a statute so as to uphold its constitutionality when

reasonably possible is not a license to rewrite legislation). Thus, if the claimants are correct that the lack of a probable cause hearing violates due process, the statute would be facially unconstitutional and the appropriate remedy would be dismissal. The State concedes that if the statute is declared constitutionally defective and dismissal is deemed the appropriate remedy, then the motion to dismiss was properly brought under section 2-619(a)(9). Accordingly, we must reach the merits of the constitutional question presented by this case.

¶ 14                                    II. Statutory Scheme

¶ 15    We begin with an overview of the statutory scheme. Section 36-1 of the Criminal Code provides that any vehicle used with the "knowledge and consent of the owner" in the commission of any of the offenses enumerated may be seized and delivered "forthwith" to the sheriff of the county where the seizure occurred. 720 ILCS 5/36-1 (West 2006). The offenses listed in the statute that make a vehicle subject to seizure include such crimes as the aggravated DUI and DWLR offenses allegedly committed in the present case. See 720 ILCS 5/36-1 (West 2006).

¶ 16    Once a seized vehicle is delivered to the sheriff, he has 15 days to notify the State's Attorney of the county where the seizure occurred. 720 ILCS 5/36-1 (West 2006). The statute allows the spouse of an owner of a seized vehicle to make a showing that the seized vehicle is the only source of transportation and that the financial hardship to the family would outweigh the benefit to the State from the seizure. 720 ILCS 5/36-1 (West 2006). Return of the vehicle under this hardship provision, however, is discretionary, not mandatory. See 720 ILCS 5/36-1 (West 2006) (the seized vehicle "may be" returned to the spouse or family member under this provision); see also *People v. Reed*, 177 Ill. 2d 389, 393 (1997) (legislature's use of the word "may" generally indicates a permissive or directory reading, rather than a mandatory one). Likewise, the statute provides for a discretionary return of the vehicle in cases where "forfeiture was incurred without willful negligence or without any intention on the part of the owner of the *** vehicle *** or any person whose right, title or interest is of record ***, to violate the law, or finds the existence of such mitigating circumstances as to justify remission of the forfeiture." 720 ILCS 5/36-2(a) (West 2006). In such circumstances, the State's Attorney "*may cause* the sheriff to remit the [vehicle] upon such terms and conditions as the State's Attorney deems reasonable and just." (Emphasis added.) 720 ILCS 5/36-2(a) (West 2006). The State's Attorney is to "exercise his discretion under the foregoing provision *** promptly after notice is given in accordance with Section 36-1." 720 ILCS 5/36-2(a) (West 2006). If the State's Attorney exercises his discretion against remitting the vehicle, he is to "forthwith bring an action for forfeiture." 720 ILCS 5/36-2(a) (West 2006). Once notified of the forfeiture proceeding, the owner of the vehicle or any person whose right, title or interest is of record "may within 20 days *** file a verified answer *** and may appear at the hearing on the action for forfeiture." 720 ILCS 5/36-2(a) (West 2006).

¶ 17    The State has the burden at the forfeiture hearing to show by a preponderance of the evidence that the vehicle was used in the commission of an offense described in section 36-1. 720 ILCS 5/36-2(a) (West 2006). If the State fails to make this required showing, the court

must order the vehicle released to the owner. 720 ILCS 5/36-2(a) (West 2006). The statute also allows the owner, or any person whose right, title or interest is of record, to show by a preponderance of the evidence that "he did not know, and did not have reason to know," that the vehicle was to be used in the commission of an offense. 720 ILCS 5/36-2(a) (West 2006). The statute, however, does not provide for automatic return of the vehicle if an owner or person of interest makes such a showing. See 720 ILCS 5/36-2(a) (West 2006). Instead, the statute makes such a return discretionary with the court. See 720 ILCS 5/36-2(a) (West 2006) (where the State has made its showing, "the Court *may order* the *** vehicle *** destroyed; may order it delivered to any local, municipal or county law enforcement agency, or the Department of State Police or the Department of Revenue of the State of Illinois; or may order it sold at public auction" (emphasis added)).

¶ 18    Finally, section 36-4 of the Code provides for a remission procedure that allows a claimant or other person interested in a vehicle to file a petition for remission with the Attorney General. 720 ILCS 5/36-4 (West 2006). The provision makes clear that the Attorney General may grant remission of the vehicle if he finds the existence of mitigating circumstances to justify remission of the forfeiture, including that the owner or interested person incurred the forfeiture innocently, without any willful negligence or any intention to violate the law. 720 ILCS 5/36–4 (West 2006). But again, this provision makes the return of the vehicle in such cases purely discretionary, stating that the Attorney General "may cause the [vehicle] to be remitted upon such terms and conditions as he deems reasonable and just, or order discontinuance of any forfeiture proceeding relating thereto." 720 ILCS 5/36-4 (West 2006).

¶ 19                                III. Standard of Review

¶ 20    Statutes are presumed constitutional, and the party challenging a statute has the burden of establishing a clear constitutional violation. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 200 (2009). Thus, this court will affirm the constitutionality of a statute if it is reasonably capable of such a determination (*People v. Johnson*, 225 Ill. 2d 573, 584 (2007)), and will resolve any doubt as to the statute's construction in favor of its validity (*People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010)). Moreover, a challenge to the facial validity of a statute is the most difficult challenge to mount successfully because an enactment is invalid on its face only if no set of circumstances exists under which it would be valid. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008). The validity of a statute is a question of law, which this court reviews *de novo. People v. Madrigal*, 241 Ill. 2d 463, 466 (2011).

¶ 21    The fifth and fourteenth amendments to the United States Constitution, as well as the due process clause of the Illinois Constitution, contain very similar prohibitions against depriving any person of "life, liberty, or property, without due process of law." See U.S. Const., amends. V, XIV; Ill. Const. 1970, art. I, § 2. Under *People v. Caballes*, 221 Ill. 2d 282, 313-14 (2006), if there are "cognate provisions" of the two constitutions, as is the case here, Illinois courts will follow United States Supreme Court precedent unless one of the two conditions recognized in *Caballes* is present. Neither condition noted in *Caballes* is present here, and none of the parties argue otherwise. Accordingly, we will follow United States

Supreme Court precedent construing the due process clause in circumstances similar to the present case. See *People v. Pecoraro*, 175 Ill. 2d 294, 318 (1997) (this court declined to construe our state due process clause more broadly than the due process clause of the fourteenth amendment).

¶ 22                                    IV. Due Process Requirements

¶ 23    The guarantee of due process normally compels the government to provide notice and an opportunity to be heard before a person is deprived of property. *United States v. James Daniel Good Real Property*, 510 U.S. 43, 47 (1993). This general rule, however, is subject to "some exceptions." *Id.* at 53. For example, a predetention hearing is not required if the property is mobile and could be removed to another jurisdiction, destroyed or concealed if advanced warning of confiscation were given. *Id.* at 52-53.

¶ 24    In the present case, the claimants do not argue that due process required a predetention hearing. Rather, they argue that they are entitled to a "meaningful hearing at a meaningful time" after the seizure has occurred. They contend that waiting for the outcome of the forfeiture proceeding, which could take months, does not satisfy this standard in the absence of a "prompt" probable cause hearing after the seizure.

¶ 25    We believe that claimants' due process argument is unpersuasive when compared with United States Supreme Court precedent and must therefore be rejected. In *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555 (1983), Customs Service officials seized $8,850 from the claimant when she failed to declare the currency upon entry into this country. The federal statutory and regulatory scheme in effect at the time *$8,850* was decided was not much different in key respects from our current Illinois forfeiture statute. In *$8,850*, Customs was required by federal regulation to notify any person who appeared to have an interest in the seized property of the property's liability to forfeiture and of the claimant's right to petition the Secretary of the Treasury for remission or mitigation of forfeiture. 19 C.F.R. § 162.31(a) (1982). Another federal provision also gave the Secretary discretion to "remit any forfeiture or penalty *** in whole or in part upon such terms and conditions as he deems reasonable and just." 31 U.S.C. § 1104. The regulations required the claimant to file a remission petition within 60 days of notification. 19 C.F.R. § 171.12(b) (1982). If the claimant did not file a petition, or if the decision on the petition made legal proceedings appear unnecessary, Customs was required to prepare a full report of the seizure for the United States Attorney. 19 U.S.C. § 1603 (1982). At the time of the seizure in *$8,850*, the federal scheme did not contain a time limit or a requirement of a prompt report by Customs to the United States Attorney for purposes of instituting forfeiture proceedings. *$8,850*, 461 U.S. at 558 n.3. Upon receipt of the report, however, the United States Attorney was required " 'immediately to inquire into the facts' " and if it appears probable that a forfeiture has been incurred, " 'forthwith to cause the proper proceedings to be commenced and prosecuted, without delay.' " *$8,850*, 461 U.S. at 558 (quoting 19 U.S.C. § 1604). There was, however, no strict time limit within which the forfeiture proceeding had to be concluded. Finally, the statute provided that once a case is reported to the United States Attorney for legal proceedings, no administrative action may be taken on any petition for

remission or mitigation. 19 C.F.R § 171.2(a) (1982).

¶ 26    In *$8,850*, claimant's currency was seized on September 10, 1975, and eight days later the Customs Service formally notified her by mail that the seized property was subject to forfeiture and that she had a right to petition for remission or mitigation. A week later, the claimant filed a petition for remission or mitigation, stating that the violation was unintentional because she had believed that she was only required to declare funds that had been obtained in another country and that she had brought the seized funds with her from the United States at the start of her trip. Thereafter, the Customs officer assigned to the case delayed filing the report of the seizure with the United States Attorney for seven months while the officer investigated the case. Claimant was eventually indicted on charges of making false statements to a Customs officer and of transporting currency into the United States without filing the required report. Disposition of the remission petition was then held pending the resolution of the criminal trial. Finally, in March 1977, some 18 months after the currency was seized, the United States Attorney filed a civil complaint seeking forfeiture of the currency. Claimant raised an affirmative defense to the suit, asserting that the government's " 'dilatory processing' of her petition for remission or mitigation and 'dilatory' commencement of the civil forfeiture action violated her" due process right to a hearing at a meaningful time. *$8,850*, 461 U.S. at 560-61.

¶ 27    The Supreme Court in *$8,850* framed the question before it as when does a postseizure delay "become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time." *$8,850*, 461 U.S. at 562-63. The Court then found that the question of when the government's delay in commencing the forfeiture suit violates the due process right to a hearing is analogous to the issue of when the government's delay violates the right to a speedy trial. *Id*. at 564. Using that analogy, the Court then adopted the test it developed in *Barker v. Wingo*, 407 U.S. 514 (1972), to resolve speedy-trial issues. *$8,850*, 461 U.S. at 564. The *Barker* test calls for the weighing of four factors: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *$8,850*, 461 U.S. at 564 (citing *Barker*, 407 U.S. at 530). After applying the *Barker* test, the Court concluded that the 18-month delay in initiating the forfeiture suit did not violate claimant's due process right to a "meaningful hearing at a meaningful time," and that the delay in filing the suit was reasonable. *Id*. at 563-69.

¶ 28    In the present case, claimants acknowledge that the Supreme Court in $*8,850* did indeed frame the issue as "when a postseizure delay may become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time." They argue, however, that *$8,850* does not apply to this case because *$8,850* involved the seizure of cash and not the seizure of an automobile, upon which one's livelihood might depend. Moreover, we add that one might also argue that *$8,850* involved the time limits within which the forfeiture action itself must be initiated, and not the timing of an interim postseizure hearing. We find, however, that such limited readings of *$8,850* might be supportable if the United States Supreme Court itself had not read the case more expansively less than three years later in *United States v. Von Neumann*, 474 U.S. 242 (1986). See *Krimstock v. Safir*, No. 99 Civ. 12041 MBM, 2000 WL 1702035, at *5 (S.D.N.Y. Nov. 13, 2000), *vacated*, 306 F.3d 40.

¶ 29    In *Von Neumann*, the claimant argued that the government's delay in responding to his remission petition filed to challenge the seizure of his car by United States Customs agents deprived him of his property without due process of law. The Court of Appeals for the Ninth Circuit emphasized the importance of the automobile in our society before holding that Customs' 36-day delay violated claimant's due process rights. The Ninth Circuit further held that Customs was constitutionally required to act promptly " 'on a petition for remission or mitigation within 24 hours of receipt,' *** [and] claimant ha[d] a right to a personal appearance to present his or her claim." See *Von Neumann*, 474 U.S. at 247 (citing *Von Neumann v. United States*, 660 F.2d 1319, 1326-27 (9th Cir. 1981)). But the United States Supreme Court reversed. In doing so, the high Court found that the claimant did not have a constitutional right to a prompt disposition of his remission petition while awaiting the forfeiture proceeding. *Von Neumann*, 474 U.S. at 249. The Court found that this was because "[i]mplicit in this Court's discussion of timeliness in *$8,850* was the view that *the forfeiture proceeding, without more, provides the postseizure hearing required by due process* to protect [claimant's] property interest in the car." (Emphasis added.) *Von Neumann*, 474 U.S. at 249. Later in the opinion, the Court again underscored this precept by stating, "[W]e have already noted that [claimant's] right to a forfeiture proceeding meeting the *Barker* test satisfies any due process right with respect to the car ***." *Von Neumann*, 474 U.S. at 251.

¶ 30    From the foregoing discussion of *$8,850* and *Von Neumann*, we conclude that if the due process right to a meaningful postseizure hearing at a meaningful time requires only the forfeiture proceeding, it does not also require a probable cause hearing. Accordingly, we find that the trial court's determination to the contrary was erroneous.

¶ 31                                    V. *Krimstock*

¶ 32    In support of its position that a prompt, probable cause hearing was required while awaiting the forfeiture hearing, the trial court relied heavily upon the decision of the United States Court of Appeals for the Second Circuit in *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002). We believe that *Krimstock* is distinguishable on its facts and not controlling of the outcome in the present case. Furthermore, it appears that *Krimstock* was wrongly decided in light of the Supreme Court precedent discussed above. Thus, we do not find it persuasive.

¶ 33    In *Krimstock*, a New York City ordinance authorized the City's property clerk to take custody, following seizure, of all property used as a means of committing crime. If a claimant made a formal demand for return of a vehicle, the City had 25 days in which either to initiate a civil forfeiture proceeding or to release the vehicle. However, even when the City chose to commence a civil forfeiture proceeding within the 25-day period, the proceeding was commonly stayed until the criminal proceeding concluded. *Krimstock*, 306 F.3d at 45. This resulted in a situation where the forfeiture proceedings generally took "months or even years to be finalized." *Krimstock*, 306 F.3d at 44.

¶ 34    In contrast to *Krimstock*, there is no evidence in the record before us that forfeiture proceedings in Illinois are commonly stayed until after the criminal proceedings. In fact, the record suggests claimants here could have had a resolution on the merits of their forfeiture proceedings within a few months of the seizures, at latest, if not for the claimants' multiple

requests for continuances and their constitutional challenges to the statute.

¶ 35    The United States District Court in *Krimstock* undertook a thorough discussion of *$8,850* and *Von Neumann* to conclude that due process considerations did not require a probable cause hearing. *Krimstock v. Safir*, No. 99 Civ. 12041 MBM, 2000 WL 1702035, at *7 (S.D.N.Y. Nov. 13, 2000), *vacated*, 306 F.3d 40. Relying on this Supreme Court precedent, the district court observed that the "meaningful hearing at a meaningful time" required by the Constitution was the forfeiture hearing itself. *Id.* at *5, *7.

¶ 36    The Second Circuit, however, reversed the district court's ruling and instead held that a probable cause hearing was required in addition to the forfeiture proceeding. *Krimstock*, 306 F.3d at 69. In reaching this determination, the court did not discuss *$8,850* at all other than to very briefly note that *$8,850* employed the *Barker* test. See *Krimstock*, 306 F.3d at 52. The court then wrote that "to say that the forfeiture proceeding, which often occurs more than a year after a vehicle's seizure, represents a meaningful opportunity to be heard at a meaningful time on the issue of continued impoundment is to stretch the sense of that venerable phrase to the breaking point." *Krimstock*, 306 F.3d at 53. The court did not explain how its commentary squared with the fact that the forfeiture proceeding in *$8,850* was not even initiated until 18 months after the seizure, nor did it explain the fact that there was no statutory or administrative requirement in place in *$8,850* that mandated a prompt, probable cause hearing. The court also offered no real discussion of *Von Neumann* or of the Supreme Court's statement in that case that "the forfeiture proceeding, without more, provides the postseizure hearing required by due process." *Von Neumann*, 474 U.S. at 249.

¶ 37    *Krimstock* did attempt to briefly distinguish *Von Neumann* in a footnote. First, it stated that *Von Neumann* addressed the "different issue of what process was due in proceedings for remission or mitigation under U.S. customs laws when a claimant could challenge the seizure of his or her property in judicial forfeiture proceedings." *Krimstock*, 306 F.3d at 52 n.12. Second, it noted that the claimant in *Von Neumann* could have filed a motion for return of the vehicle under Federal Rule of Criminal Procedure 41(e), if it was believed the seizure was improper. And finally, it noted that Customs had actually released the claimant's vehicle after he posted bond. *Krimstock*, 306 F.3d at 52 n.12.

¶ 38    We do not believe that these are valid bases for distinguishing *Von Neumann*. As to *Krimstock*'s first point, we note that a petition for remission or mitigation where the Secretary of the Treasury considers whether the property seized by Customs should be returned because of a lack of "willful negligence or *** any intention *** to defraud" could at least be considered analogous to a probable cause hearing. See 19 U.S.C. § 1618 (Supp. III 1985). Notably, testimony may be taken at the federal remission hearing. See 19 U.S.C. § 1618 (Supp. III 1985). If the timing of the remission procedure or its essential character did not satisfy due process standards and something more than a forfeiture proceeding was required, the Supreme Court would not have said that the forfeiture proceeding itself provides all the process that is due in *Von Neumann*. The Second Circuit's point also ignores *Von Neumann*'s broad reading of what constitutes a "meaningful hearing at a meaningful time" under *$8,850*.

¶ 39    Secondly, *Krimstock*'s point about the option in *Von Neumann* for filing a motion under

-12-

Federal Rule of Criminal Procedure 41(e) is a red herring. The discussion in *Von Neumann* about Rule 41(e) was placed in a footnote and was clearly *dicta* that was not essential to the holding. Moreover, the option to file the motion under federal law only exists for a limited time until a civil forfeiture action is filed. Once a forfeiture action is filed, the option to file the motion is lost. See, *e.g.*, *United States v. One 1985 Black Buick Automobile*, 725 F. Supp. 148, 150 (W.D.N.Y. 1989). There is also no indication that there were any time limits imposed on resolving a motion brought under Rule 41(e). Just like the civil forfeiture proceeding itself, it appears possible for proceedings under a Rule 41(e) motion to be met with substantial delays. Additionally, a Rule 41(e) motion is something that would have to be initiated by a claimant. *Krimstock* never explained whether the New York statutory scheme failed to include an opportunity for the filing of a similar motion. But we do know that Illinois's statutory scheme contains a provision similar to federal Rule 41(e), as well as providing other opportunities to challenge a vehicle unlawfully retained. Compare 725 ILCS 5/114-12(a) (West 2008) ("A defendant aggrieved by an unlawful search and seizure may move the court for the return of property."), with Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property *** may move for the property's return."); see also *People v. $1,124,905 U.S. Currency*, 177 Ill. 2d 314, 340, 341 (1997) (a claimant's section 2-615 motion to dismiss challenging the legal sufficiency of the State's allegations of probable cause that are apparent on the face of the complaint provides an early opportunity for a claimant to challenge the seizure in order to obtain return of the property wrongfully seized).[2] Thus, accepting *arguendo Krimstock*'s suggestion that a procedure like Rule 41(e) would be key to upholding a statute that does not contain a provision for a probable cause hearing, the Illinois statutory scheme would still pass constitutional muster even under *Krimstock*'s analysis.

¶ 40 Thirdly, *Krimstock* overlooked that the mechanism in *Von Neumann* for releasing a vehicle upon the posting of bond was discretionary with the Secretary of the Treasury. *Krimstock* also failed to take into consideration that the amount of bond posted in *Von Neumann* was equal to the entire fair market value of the car, which in that case required the claimant to pay $24,500 in order to get his vehicle released pending the forfeiture proceeding. Moreover, *Von Neumann* specifically noted that claimant's "right to a forfeiture proceeding meeting the *Barker* test satisfied *any* due process right with respect to the car *and* the money." (Emphases added.) *Von Neumann*, 474 U.S. at 251. Thus, the ability to post bond in *Von Neumann* cannot be considered a valid basis on which to distinguish that case.

¶ 41 We are aware that a few years ago, the Seventh Circuit addressed the constitutionality of the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 *et seq*. (West 2004)), in *Smith v.*

---

[2]See also 735 ILCS 5/19-101 *et seq*. (West 2008) ("Whenever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession."). A federal district court recently found *Krimstock* distinguishable on the basis that there was no indication that the claimant would suffer the same burden of delay under a Missouri statutory scheme by seeking a writ of replevin. *Walters v. City of Hazelwood*, No. 4:09-CV-1473 (CET), 2010 WL 4290105, at *5 (E.D. Mo. Oct. 22, 2010).

*City of Chicago*, 524 F.3d 834 (7th Cir. 2008). The court began by noting that *Von Neumann* "seems on point." *Smith*, 524 F.3d at 837. But *Smith* ultimately followed *Krimstock* in distinguishing *Von Neumann* using the same flawed reasoning with respect to Rule 41(e) and the ability to post bond for return of the vehicle. See *Smith*, 524 F.3d at 837. At any rate, the Supreme Court vacated the Seventh Circuit's opinion in *Smith*, ruling that the case was moot. See *Alvarez v. Smith*, 558 U.S. ___, ___, 130 S. Ct. 576, 578 (2009). Thus, *Smith* has no precedential value here. See *1998 Ford Explorer*, 399 Ill. App. 3d at 102 (citing *Central Pines Land Co. v. United States*, 274 F.3d 881, 894 n.57 (5th Cir. 2001)).

¶ 42                           VI. Innocent Ownership by Co-owner

¶ 43     Aside from the temporal gap that existed between the seizure of the vehicle and the forfeiture proceeding, *Krimstock* seemed most concerned about the inability of innocent owners to challenge promptly the City's retention of their vehicles. *Krimstock* cited *United States v. James Daniel Good Real Property*, 510 U.S. 43, 55 (1993), for the notion that "the Supreme Court has shown special concern for the risk of erroneous deprivation posed to innocent owners." *Krimstock*, 306 F.3d at 56. But *Good Real Property* is clearly not controlling here for a number of reasons.

¶ 44     In *Good Real Property*, the Court held that a predeprivation, probable cause hearing was necessary, but limited its holding to the seizure of "real property." *Good Real Property*, 510 U.S. at 61. Specifically, the seizure in that case was of a home–which the Court found to be an interest of "historic and continuing importance," but which lacks mobility like a vehicle. *Id.* at 54, 57, 61. *Good Real Property* expressed its concern for "innocent owners" only in the context of noting that the federal statute in play contained a true "innocent ownership" defense, which specifically provided that real property could not be forfeited "to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." *Good Real Property*, 510 U.S. at 55 (quoting 21 U.S.C. § 881(a)(7)). In other words, Congress had expressed an intent that if any one of the possibly multiple co-owners lacked knowledge of, and the intent to commit, a crime, forfeiture of the real property could not be accomplished against such an innocent owner. In contrast, the Illinois statute at issue here,[3] as well as the

_____

[3]The Illinois forfeiture statute requires the court to release the vehicle to the owner if the State fails to meet its burden to show that the vehicle was used in the commission of one of the specified offenses. However, the statute merely allows a claimant to present evidence of innocent ownership, while at the same time providing that the court "may order" the vehicle destroyed, delivered to the government or sold at public auction with the proceeds paid into a general county fund, as long as the State has met its burden. Additionally, the same section provides that the State's Attorney "may cause" the sheriff to remit the vehicle upon such terms as he deems reasonable and just if there is an innocent owner, but nothing therein requires the State's Attorney to do so. See also 720 ILCS 5/36-4 (West 2006) (The Attorney General "may" remit the vehicle on any terms he deems reasonable and just, or order discontinuance of the forfeiture proceeding, if the Attorney General "finds that such forfeiture was incurred without willful negligence or without any intention on the part of the owner *** to violate the law").

-14-

federal statute involved in *$8,850* and *Von Neumann*,[4] did not mandate return of the vehicles or cash just because one of the owners demonstrated his innocence.

¶ 45   Section 36-1 of the Code provides that "[a]ny *** vehicle *** used with the knowledge and consent of the owner in the commission of, or in the attempt to commit *** an offense *** may be seized and delivered to the sheriff ***." It would be a misreading of the statute, however, to say that this is a pure innocent-owner exception. Here, each of the vehicles seized has multiple owners. For example, the 1998 GMC is owned by George Reardon and Reardon Painting, Inc., which is presumably George's painting business. The use of the term "owner" in section 36-1 rather than "all of the owners" indicates that the legislature intended that only one of the owners need give their knowledge and consent to the use of the vehicle in the commission of the offense to subject the vehicle to possible seizure and forfeiture. Moreover, in cases like these where one of the owners is also a defendant in the underlying criminal case, the defendant/claimant will have had a prompt, probable cause determination in connection with the criminal prosecution within 30 days of his arrest.[5] See 725 ILCS 5/109-3.1(b) (West 2008); *People v. 1998 Ford Explorer*, 399 Ill. App. 3d 99, 104 (2010).[6] Again, this scheme is in profound contrast to the innocent-ownership defense available in *Good Real Property*, which prohibited forfeiture of the property of any innocent owner regardless of whether there was a culpable co-owner. Because the Illinois statutory scheme does not contain the same concern for protecting all innocent owners, the rationale expressed in *Krimstock* is not valid here.

¶ 46   We also emphasize that a few years after *Good Real Property* was decided, the Supreme Court in *Bennis v. Michigan*, 516 U.S. 442, 446 (1996), made it clear that an innocent-owner defense in forfeiture cases is not required by the Constitution. In *Bennis*, a wife was a joint owner of an automobile with her husband. A Michigan court ordered the automobile forfeited after the husband was arrested for engaging in a sexual act with a prostitute in the

---

[4]Under the federal statute, the Secretary of the Treasury, in considering a petition for remission or mitigation, "may remit" the forfeiture if he finds that the forfeiture "was incurred without willful negligence or without any intention on the part of the petitioner to defraud *** or to violate the law." 19 U.S.C. § 1618 (Supp. III 1985).

[5]It is also well settled that under federal law in effect at the time *Von Neumann* was decided, the government needed only to prove probable cause for instituting the forfeiture action at the trial on the forfeiture action itself and not any sooner. See *United States v. Daccarett*, 6 F.3d 37, 47 (2d Cir. 1993). Similarly, under the Illinois forfeiture statute, the State need only prove probable cause at the forfeiture proceeding. However, as previously mentioned, the owner of a vehicle under the Illinois scheme does have an early opportunity to file a section 2-615 motion challenging the adequacy of the State's factual allegations with respect to probable cause and may also file a motion for return of the property if the search and seizure was not supported by probable cause. See 725 ILCS 5/114-12(a) (West 2008); see also *$1,124,905*, 177 Ill. 2d at 341.

[6]Additionally, a good argument can be made that "there are legitimate reasons why the forfeiture case may need to await the outcome of the criminal trial." See *People v. 1998 Ford Explorer*, 399 Ill. App. 3d at 104 (citing *$8,850*, 461 U.S. at 567).

-15-

automobile while it was parked on a public street. The United States Supreme Court rejected the wife's claim that she was entitled by due process to contest the forfeiture by establishing that she did not know her husband would use the vehicle to violate Michigan's indecency law. The Court stated that "a long and unbroken line of cases holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know it was to be put to such use." *Bennis*, 516 U.S. at 446.

¶ 47    *Krimstock* attempted to distinguish *Bennis* in part by claiming in a footnote that "[n]othing on the face of the [Michigan] provision, or in the *Bennis* case, suggests that the statute permitted seizure and retention of property prior to adjudication of its status as a nuisance." *Krimstock*, 306 F.3d at 56 n.15. But this point was irrelevant to the *Bennis* holding, particularly in light of the Court's heavy reliance upon *Van Oster v. Kansas*, 272 U.S. 465 (1926), where the vehicle in question there was seized and retained prior to any adjudication as to its status. In that case, Van Oster purchased an automobile from a dealer, but agreed that the dealer might retain possession for its business. The dealer allowed an associate to drive the vehicle, and the associate used it to illegally transport liquor. The associate was arrested, the vehicle seized at the time of his arrest, and possession of the vehicle thereafter remained with the sheriff. *State v. Brown*, 241 P. 112 (Kan. 1925). The State eventually brought a forfeiture action. Following a bench trial, the court ordered the vehicle forfeited. A jury later acquitted the associate of the criminal charge. But the Supreme Court of the United States nonetheless soundly rejected Van Oster's innocent-owner defense, stating "certain uses of property may be regarded so undesirable that the owner surrenders his control at his peril." *Van Oster*, 272 U.S. at 467.

¶ 48    In sum, we do not find *Krimstock* persuasive. We instead believe that *$8,850* and *Von Neumann* are the controlling precedent, which leads us to the conclusion that a probable cause hearing is not necessary. We base our conclusion upon the rationale noted above, especially that a probable cause determination has been made by police at the scene, the statute does not make remission to an innocent co-owner mandatory in cases where another of the owners is culpable, and in most cases, a prompt probable cause determination will be made in connection with the underlying criminal prosecution. The trial court correctly noted that the probable cause determination in the criminal proceedings does not necessarily concern the identity of the vehicle or whether it was used to commit the crime. But the criminal probable cause hearing will consider the guilt of a defendant as it pertains to the underlying offense alleged in the forfeiture complaint in the vast majority of cases. It is not very likely that police will have been mistaken about the identity of the vehicle, or its connection to the crime, especially for crimes such as the DUI and DWLR offenses involved here, which are so easily documented and where a grand jury has ascertained probable cause for charging the defendant/claimant with the underlying criminal offense. Again, a claimant does have an early opportunity to contest any defects apparent on the face of the forfeiture complaint pertaining to the vehicle's connection to the crime by bringing a section 2-615 motion to dismiss. The forfeiture proceeding itself, however, allows for the adversary hearing where the allegations are sufficient to survive a motion to dismiss. Accordingly, we will apply the *Barker* factors to determine whether the forfeiture proceedings below satisfied any due process rights on the part of the claimants so far.

¶ 49                                    VII. Application of *Barker* Test

¶ 50          With respect to the first factor, the length of the delay, we note that "short delays–of perhaps a month or so–need less justification than longer delays." *$8,850*, 461 U.S. at 565. The second factor is closely related to the first and concerns the reason the government assigns to justify the delay. *Id.* at 565. Here, the same attorney represented all of the claimants in each of the three consolidated cases. The State filed its complaints for forfeiture within 22, 20 and 20 days of the seizures, respectively. Indeed the statute requires such a prompt filing. This is because after a vehicle is seized it must "forthwith" be delivered to the sheriff, who then has 15 days to notify the State's Attorney of the seizure. The State's Attorney in turn must then exercise his discretion "promptly" as to whether to return the vehicle where there was no willful negligence or intention to violate the law on the part of the owner. See 720 ILCS 5/36-2(a) (West 2006). If the State's Attorney decides not to remit the vehicle, he is to "forthwith" bring an action for forfeiture. See 720 ILCS 5/36-2(a) (West 2006).

¶ 51          Claimants argue that the words "forthwith" and "promptly" are of "little value in ensuring timeliness." Claimants' argument is not persuasive. Just because the statute does not specify the exact number of days for filing a complaint does not mean that the timeline is open-ended or that it does not comply with due process demands. The words "forthwith" and "promptly" have recognized legal meanings that are consistent with their commonly understood dictionary definitions, which indicate that the action to be performed must be done within a short time and without undue delay. See Black's Law Dictionary 680 (8th ed. 2004) (defines "forthwith" as "1. Immediately; without delay. 2. Directly; promptly; within a reasonable time under the circumstances"); *Scammon v. Germania Insurance Co.*, 101 Ill. 621, 626 (1881); (In Illinois, "the words 'forthwith,' and 'as soon after as possible,' *** mean within 'a reasonable time,' 'without unreasonable delay,' and are the equivalent of 'due diligence' "); *Morgan v. Department of Financial & Professional Regulation*, 388 Ill. App. 3d 633, 673 (2009) ("promptly" has been defined as " 'without appreciable delay.' " (quoting *Barry v. Barchi*, 443 U.S. 55, 66 (1979))); Black's Law Dictionary 1214 (6th ed. 1990) (something done "promptly" is done "without delay and with reasonable speed").

¶ 52          Claimants further argue that the problem with the statute is that it contains no specific deadline within which the forfeiture hearing must take place. But this of course is not lethal to the facial constitutionality of the statute. The statute at issue in *$8,850* did not contain a requirement for a "prompt" report of the seizure by Customs to the United States Attorney for purposes of instituting the forfeiture proceeding. *$8,850*, 461 U.S. at 558 n.3. Nor did it specify a specific number of days within which the proceeding had to be instituted, or a hearing thereon commenced or completed. The statute did require that once the report was made, the United States Attorney was to "immediately" inquire into the facts, and if it appeared probable that a forfeiture has occurred, to "forthwith" commence the proceedings and prosecute "without delay." *$8,850*, 461 U.S. at 558 (quoting 19 U.S.C. § 1604). But it is clear from the Court's holding that the "without delay" language cannot mean absolutely no delays, as the Court recognized that the filing of the proceedings could be reasonably delayed during pendency of the criminal charges without offending principles of due process. *Id.* at 567. Although it is not necessary here, we could easily read a prosecuted "without

-17-

unreasonable delay" requirement into the Illinois forfeiture statute given the manifest intent of the statute. See *Community Consolidated School District Number 210 v. Mini*, 55 Ill. 2d 382, 386 (1973) (collecting cases for the proposition that "if the main intent and purpose of the legislature can be determined from a statute, words may be modified, altered or even supplied so as to obviate any repugnancy or inconsistency with the legislative intention" ). It is clear from the legislature's use of the words "forthwith" and "promptly" in connection with the instigation of forfeiture proceedings that it intended an expeditious prosecution and resolution of the proceedings so far as practical.

¶ 53    The short time it took to initiate the proceedings in this case is in sharp contrast to the 18-month delay in *$8,850*, which although described by the Supreme Court as "substantial" was held not to be unconstitutional. *$8,850*, 461 U.S. at 569-70. We also note that claimants here filed their answers within a month and a half of the seizures. The cases would have soon been ready to proceed to a hearing on the merits had claimants wanted a timely resolution. Instead, claimants filed several motions for continuances before finally attacking the statute as facially unconstitutional. The delay in this case is entirely attributable to claimants. Accordingly, we conclude that the first two *Barker* factors strongly favor the State.

¶ 54    The third factor to be considered is "the claimant's assertion of the right to a judicial hearing." *$8,850*, 461 U.S. at 568-69. In considering this factor, the Court in *$8,850* looked to what steps the claimant could have taken on her own to accomplish an earlier return of her vehicle–such as filing a motion under Federal Rule of Criminal Procedure 41(e) for return of the seized property or filing a petition for remission–and concluded that the "failure to use these remedies can be taken as some indication that [the claimant] did not desire an early judicial hearing." *$8,850*, 461 U.S. at 569. Here, it does not appear that claimants took any steps to obtain an early return of their vehicles. Claimants did not seek discretionary return of their vehicles by filing petitions for remission with the Attorney General. Nor does it appear that they filed any motions pursuant to section 114-12(a) of the Code of Criminal Procedure of 1963 for return of their seized property. See 725 ILCS 5/114-12(a) (West 2006). Instead, claimant in the lead case filed several motions for continuances before waiting several months to file a motion to dismiss that requested the court to strike the statute as unconstitutional.

¶ 55    The final factor is whether claimants have been prejudiced by the delay. Under this prong, the main inquiry is whether the delay hindered the claimant in presenting a defense on the merits, especially in terms of the loss of witnesses or other evidence. *$8,850*, 461 U.S. at 569. Here, claimants have not alleged any undue delay, let alone prejudice stemming from the delay. Claimants do allege that they have been deprived of their vehicles while the forfeiture proceedings are pending. But something more than this must be alleged to satisfy this prong. See *1998 Ford Explorer*, 399 Ill. App. 3d at 103 (citing *Von Neumann*, 474 U.S. at 251).


¶ 56            VIII. Facial Challenges Contrasted With As-Applied Challenges

¶ 57    The special concurrence would find that claimants mischaracterized their challenge as a facial one rather than an "as applied" challenge. The special concurrence further asserts that

this court is not bound by the parties' conception of the case, and we can instead make our own assessment and proceed to recharacterize the case as an "as applied" challenge. It then concludes that if we view this case as an "as applied" challenge, then the majority's analysis and conclusion (which the special concurrence says really invokes an as-applied analysis) is "both appropriate and correct." See *infra* ¶ 100 (Karmeier, J., specially concurring).

¶ 58    There are some problems with the special concurrence's observations, the first of which is evident from its own standard of what constitutes a facial challenge. Quoting a law review article, the special concurrence states the following:

> "[A] 'valid rule facial challenge' is premised on the notion that because of something a statute contains or fails to include, it can never pass constitutional muster. The inclusion of the offending provision or the omission of a provision which constitutional principles require is an inherent and inescapable flaw which renders the law invalid no matter what the circumstances. Isserles, *Overcoming Overbreadth*, 48 Am. U. L. Rev. at 387." See *infra* ¶ 87 (Karmeier, J., specially concurring).

But this is precisely the kind of argument claimants are making in this case to support their facial challenge: *i.e.*, the statute fails to include a provision for a probable cause hearing, which is an inescapable flaw that renders the forfeiture statute unconstitutional under every circumstance. Claimants argue that the flaw is that the statute does not require a probable cause hearing.

¶ 59    The special concurrence's idea that this could not be a facial challenge because claimants' objective was to prevent their own forfeiture proceedings from going forward (see *infra* ¶ 96 (Karmeier, J., specially concurring)) is without any legal foundation. Claimants do not ask for this court to provide a probable cause hearing and they do not allege that the time frame for the forfeiture hearing itself may sometimes satisfy probable cause. Instead they contend that the statute is unconstitutional in every instance by failing to provide a probable cause hearing at all. The remedy they seek is a declaration that the statute is unconstitutional on its face and for return of their vehicles. The trial court in turn declared the statute facially unconstitutional, specifically finding that it contained a defect that prevented its application in any circumstance. The trial court then issued an order complying with Rule 18 that explained the same. Under the circumstances, we believe that it is completely appropriate for this court to accept claimants' characterization of the challenge as a facial one.

¶ 60    The special concurrence's willingness to recharacterize claimants' argument under the circumstances here is also not supported by the authority it invokes. For example, in *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court considered a facial challenge to the procedures of the federal Bail Reform Act. The Court found that to "sustain [the statutory procedures] against such a challenge, we need only find them 'adequate to authorize the pretrial detention of at least some [persons] charged with crimes' [citation], whether or not they might be insufficient in some particular circumstances." *Id.* at 751. The Court found that the test was satisfied and the procedures passed constitutional muster. *Id*. The Court did not "recharacterize" the defendants' argument simply because it was ultimately unsuccessful or simply because it could have been reworked to fit within the framework of an "as applied"

challenge.

¶ 61 Similarly, the Supreme Court in the other two cases relied upon by the special concurrence here–*Doe v. Reed*, 561 U.S. ___, ___, 130 S. Ct. 2811, 2817 (2010), and *Citizens United v. Federal Election Comm'n*, 558 U.S. ___, ___, 130 S. Ct. 876, 893 (2010)–did not recharacterize or negate a litigant's decision to bring a facial challenge. In *Doe*, the parties disagreed about whether the claim was properly characterized as a facial or as-applied challenge. The Court found that it had characteristics of both, but the label was not what matters. *Doe*, 561 U.S. at ___, 130 S. Ct. at 2817. "The important point is that plaintiffs' claim and the relief that would follow *** reach beyond the particular circumstances of these plaintiffs." *Id*. at ___, 130 S. Ct. at 2817. The Court continued by stating that plaintiffs "must therefore satisfy our standards for a facial challenge to the extent of that reach." *Id.* at ___, 130 S. Ct. at 2817.

¶ 62 In *Citizens United*, the Court found that a litigant had not waived his right to challenge the facial validity of a federal law restricting corporate political speech. The Court noted that the distinction between the two kinds of challenges is both instructive and necessary to the extent it "goes to the breadth of the remedy employed by the court, not what must be pleaded in a complaint." *Citizens United*, *Id.* at ___, 130 S. Ct. at 893.

¶ 63 Here, we must initially assess claimants' challenge for facial invalidity. This was the remedy sought and the one ordered by the circuit court when it found that the statute was unconstitutional in all its applications and therefore could not be enforced.

¶ 64 Inherent in the special concurrence's suggestion that claimants' challenge should not be characterized as facial is the notion that if the challenge is in fact a facial one, the analysis must employ the *Mathews* factors to determine the constitutional validity of the statute. But any argument that *Mathews* need inform the decision here ignores our in-depth discussion of *$8,850* and *Von Neumann*. As we have explained above, a limited reading of *$8,850*–one that would apply it only to the time limits within which the forfeiture action itself must be initiated, rather than the timing of the initial postseizure hearing–might be plausible if the Supreme Court itself had not read the case more expansively less than three years later in *Von Neumann*.

¶ 65 In *Von Neumann*, the Court wrote: "we have already noted that the [claimant's] right to a forfeiture proceeding meeting the *Barker* test satisfies any due process right with respect to the car." *Von Neumann*, 474 U.S. at 249. Importantly, Von Neumann was claiming that the lack of a prompt answer on his remission petition violated due process. The remission procedure would be akin to a probable cause hearing in our case. In *$8,850*, the Court held that an 18-month delay in initiation of the proceedings did not violate due process. And in *Von Neumann* it held that a "forfeiture proceeding meeting the *Barker* test satisfied any due process right" (*Von Neumann*, 474 U.S. at 249). In so doing, *Von Neumann* reversed the Ninth Circuit Court of Appeals ruling that a remission hearing within 24 hours of the seizure was required by due process. The *Von Neumann* Court then went even one step further and found the remission-petition procedure itself was of no consequence and was "not constitutionally required." *Id.* at 250.

¶ 66 In other words, *Von Neumann* stands for the proposition that intermediary hearings are

generally not required while awaiting the final outcome of forfeiture proceedings. Even if *$8,850* and *Von Neumann* can be considered as-applied cases (*Von Neumann* seems to have indicia of both), it is perfectly proper to rely upon them as we do without the need to discuss *Mathews*. This is because if an 18-month delay does not violate due process as applied and the forfeiture proceeding itself, without more, satisfies due process in terms of the kind of hearing required, then the failure to have a more prompt hearing while awaiting the outcome of the forfeiture proceeding (which would routinely take between three and six months under the Illinois procedure start to finish) could not possibly violate due process in terms of a facial challenge. Thus, the black letter law set forth in *Von Neumann* essentially controls the outcome here.

¶ 67    In the preceding section of this decision we do discuss the individual *Barker* facts in relation to the specific cases here to conclude that no unreasonable delay occurred in the proceedings below. However, we had already concluded by then that *$8,850* and *Von Neumann* were the controlling precedent, which led to our holding that the statute was not facially unconstitutional and a probable cause hearing was not necessary. Application of the *Barker* factors to the specific proceedings below, however, was briefed and argued by the parties. We find it completely appropriate to consider those factors to determine the additional matter of whether these particular claimants were denied a meaningful hearing at a meaningful time under the circumstances of this case.

¶ 68    Parenthetically, we note that *Mathews* calls for consideration of the private interest affected, the risk of an erroneous deprivation and probable value of additional safeguards, and the government's interest. See *Mathews*, 424 U.S. at 335. Neither *Von Neumann* nor *$8,850* employed the *Mathews* factors, but instead looked to the *Barker* speedy-trial test. Our decision finds *Von Neumann* and *$8,850* determinative of the outcome here for the reasons noted above. However, if this court were to apply *Mathews*, we would find that the balance of the factors weighs in favor of the State. With respect to the risk of an erroneous deprivation found critical in *Krimstock*, we would find the risk is minimal in the kinds of cases involved here. The seizures in the cases before us occurred simultaneously with the aggravated DUI and DWLR arrests for which the police must have probable cause. This probable cause determination is made by trained police officers without a personal economic stake in the matter. Their evaluations are not the type prone to error. Objective tests confirm the presence of alcohol for purposes of DUI, and officers assess DWLR by a simple, objective review of the documentary evidence. As the court in *Grinberg v. Safir*, 694 N.Y.S.2d 316, 326 (1999), observed:

> "[W]hen police have probable cause to arrest a drunk driver, the defendant's car is undeniably the instrumentality of the charged crime. The nexus between the crime and the property, and thus the justification for the forfeiture is obvious at arrest. There has been no showing than any additional or substitute safeguard would lessen the risk of an erroneous deprivation of petitioner's property."

See also *Florida v. White*, 526 U.S. 559, 565-66 (1999) (no warrant required for the seizure in a public place of a vehicle that police have probable cause to believe is itself contraband). We would also conclude that the City's interest in deterring drunk driving and safeguarding its ability to seek forfeiture by retaining possession of the vehicle outweighs the private

interest affected.

¶ 69    As a final matter, we note that we have allowed the State's motion to cite as additional authority a recent amendment to the vehicle-forfeiture statute. The State correctly points out that the statute has been amended, effective January 1, 2012, to add an additional section that will allow for a timely probable cause hearing in vehicle forfeiture proceedings going forward. Specifically, Public Act 97-544 adds section 36-1.5 to the Criminal Code of 1961 and states in relevant part that "[w]ithin 14 days of the seizure, the State shall seek a preliminary determination from the circuit court as to whether there is probable cause that the property may be subject to forfeiture." Pub. Act 97-544, § 5 (eff. Jan. 1, 2012) (adding 720 ILCS 5/36-1.5). The vehicles in the present case were obviously seized prior to the statute's future effective date of January 1, 2012. The parties do not argue the applicability of the statute to the instant proceeding. We will therefore not address it here other than to note that to the extent the amendment can be considered a procedural (rather than a substantive) change, it will be applicable to the proceedings on remand, but only "so far as practical" and only if it does not affect a vested right. See 5 ILCS 70/4 (West 2010); see also *People v. Ziobro*, 242 Ill. 2d 34, 46 (2011) (if the new rule were to guarantee the dismissal of the State's action, it would affect a vested right and therefore could not be applied retroactively).

¶ 70                    CONCLUSION

¶ 71    We conclude that the statute is not facially unconstitutional and claimants were not denied due process of law. A forfeiture proceeding meeting the *Barker* test satisfies claimants' due process rights with respect to the vehicles in question without the need for an earlier hearing. Additionally, the balance of the *Barker* factors weighs heavily in favor of the State and indicates that there was no unreasonable delay in these particular proceedings. Accordingly, the judgment of the circuit court of Du Page County is reversed and the cause remanded for further proceedings consistent with this opinion.

¶ 72    Reversed and remanded.

¶ 73    JUSTICE KARMEIER, specially concurring:

¶ 74    I agree with the majority that claimants' due process challenge to the vehicle-forfeiture provisions of the Criminal Code of 1961 (the Criminal Code) (720 ILCS 5/36-1 through 36-4 (West 2006)) should have been rejected by the circuit court. I therefore concur in its judgment reversing the circuit court's judgment and remanding the cause for further proceedings. I write separately because I disagree with the analysis employed by the majority to reach that conclusion.

¶ 75    The circuit court considered the constitutionality of the vehicle-forfeiture provisions of the Criminal Code in the context of motions to dismiss filed under section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2008)) by various claimants who were facing forfeiture of their vehicles. The circuit court concluded that the forfeiture proceedings against

each claimant should be dismissed with prejudice because the statutory scheme under which forfeiture was being sought failed to include a requirement that a postseizure probable cause hearing be conducted to test the validity of the State's detention of a seized vehicle prior to the final hearing on the merits of the State's forfeiture claim. In the circuit court's view, such probable cause proceedings are required by due process under the Illinois and United States Constitutions, and the procedural safeguards which the vehicle forfeiture provisions of the Criminal Code do contain are not sufficient to compensate for the absence of a postseizure, pretrial probable cause hearing. The circuit court therefore concluded that the challenged provisions are unconstitutional on their face.

¶ 76    The cornerstone of the circuit court's analysis was the United States Supreme Court's decision in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Mathews* involved a procedural due process challenge to administrative procedures prescribed by the Secretary of Health, Education, and Welfare for terminating disability benefits under the Social Security Act. As the circuit court in this case correctly recognized, *Mathews* identified the basic factors which must normally be considered by a court when evaluating whether a procedural scheme adopted by the government comports with due process: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

¶ 77    Building on *Mathews*, the circuit court next looked to *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), a case similar to the one before us. *Krimstock* involved a procedural due process challenge to provisions of the New York City administrative code under which the City was allowed to seize a motor vehicle following an arrest of the driver for the state-law charge of driving while intoxicated or for any other crime for which the vehicle could serve as an instrumentality, and then to bring a forfeiture action to permit it to retain the vehicle. Applying the three *Mathews* factors, the court in *Krimstock* concluded that the administrative code provisions at issue in the case did not pass constitutional muster because they failed to include provision for a prompt postseizure, prejudgment hearing before a neutral judicial or administrative officer to determine whether the City was likely to succeed on the merits of the forfeiture action and whether means short of retention of the vehicle could satisfy the City's need to preserve it from destruction or sale during the pendency of proceedings. *Id.* at 67.

¶ 78    Persuaded by the approach taken in *Krimstock*, the circuit court in this case reasoned that the vehicle-forfeiture provisions of Illinois' Criminal Code were facially invalid and unenforceable under the due process clauses of the Illinois Constitution and the fifth and fourteenth amendments of the United States Constitution because they did not provide any mechanism for a prompt, probable cause hearing after a vehicle was seized where claimants could test the State's right to retain their vehicles while they awaited trial on the merits of the forfeiture action and where the State would have the burden of demonstrating "a non-criminally charged owner's 'guilt' to justify holding the vehicle in the first place." The circuit court continued to adhere to this approach when, in a detailed written order, it denied the

State's motion for reconsideration.

¶ 79 The State filed its notice of appeal on March 30, 2010. The following day, the Illinois Appellate Court, Second District, filed an opinion in *People v. 1998 Ford Explorer*, 399 Ill. App. 3d 99 (2010). That opinion addressed three consolidated cases, all involving the same vehicle-forfeiture provisions of the Criminal Code at issue in this case. Unlike the present case, however, *1998 Ford Explorer* did not purport to address the facial validity of the relevant statutes. It considered the constitutionality of the vehicle-forfeiture provisions as applied to the particular claimants whose vehicles had been seized. Following decisions by the United States Supreme Court in *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555 (1983), and *United States v. Von Neumann*, 474 U.S. 242 (1986), both of which also involved "as applied" challenges to forfeiture proceedings undertaken by the government, the appellate court concluded that the forfeiture proceedings challenged in the three consolidated cases before it comported with due process.[7]

¶ 80 Shortly after *1998 Ford Explorer* was decided, the Illinois Appellate Court, First District, considered another case involving the seizure and subsequent forfeiture of a vehicle pursuant to the same vehicle-forfeiture provisions of the Criminal Code involved here. In that case, *People v. 1998 Lexus GS 300*, 402 Ill. App. 3d 462 (2010), the claimant raised two basic challenges to the forfeiture: (1) that the circuit court's judgment was against the manifest weight of the evidence, and (2) that the forfeiture violated the excess fines clause of the eighth amendment to the United States Constitution (U.S. Const., amend. VIII). After considering and rejecting both challenges, the court observed that claimant had also attacked the statutory forfeiture provisions on due process grounds. Because the due process challenge was raised by claimant for the first time in his reply brief, however, the court deemed that argument waived. In any case, it noted that a similar argument had recently been addressed and rejected in *People v. 1998 Ford Explorer*, 399 Ill. App. 3d 99 (2010), which I have just outlined, and *$8,850*, 461 U.S. 555, the "as applied" case on which *1998 Ford* was based. *Lexus GS 300*, 402 Ill. App. 3d at 467.

¶ 81 As the majority points out, *Lexus GS 300* was followed by *People v. 1996 Honda Accord*, 404 Ill. App. 3d 174, 175 (2010), another Second District case. In that case, claimants sought dismissal of a forfeiture complaint initiated by the State pursuant to the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 *et seq.* (West 2008)) and the Cannabis Control Act (720 ILCS 550/12 (West 2008)). The circuit court granted the dismissal based on a

---

[7]*United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. 555 (1983), and *United States v. Von Neumann*, 474 U.S. 242 (1986), both followed the analytical rubric formulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), which set forth a four-part test to be used as a guide "in balancing the interests of the claimant and the Government to assess whether the basic due process requirement of fairness has been satisfied *in a particular case*." (Emphasis added.) *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency*, 461 U.S. at 565. Whether constitutional requirements have been met in a particular case is, of course, a quintessential "as applied" inquiry.

decision by the United States Court of Appeals for the Seventh Circuit in *Smith v. City of Chicago*, 524 F.3d 834 (7th Cir. 2008), which applied the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002), rather than the standards applied in *Barker v. Wingo*, 407 U.S. 514 (1972), and *$8,850*, 461 U.S. 555, to conclude that the provisions of the Drug Asset Forfeiture Procedure Act, as written, failed to comport with the requirements of procedural due process. *Smith*, 524 F.3d at 836-38.

¶ 82   By the time the circuit court's judgment reached the appellate court, *Smith* had been vacated as moot by the United States Supreme Court in *Alvarez v. Smith*, 558 U.S. ___, 130 S. Ct. 576 (2009), after the underlying cases settled. The appellate court concluded that *Smith* did not provide the proper test for evaluating the claimants' challenge and that the circuit court's dismissal of the forfeiture complaint based on *Smith* must therefore be vacated. It then remanded the case to the circuit court for consideration of whether the forfeiture proceedings in this particular case took too long and therefore violated due process under the standards set forth in *1998 Ford Explorer*, 399 Ill. App. 3d 99, and the cases on which it was based, namely, *Barker v. Wingo*, 407 U.S. 514, *$8,850*, 461 U.S. 555, and *Von Neumann*, 474 U.S. 242. *1996 Honda Accord*, 404 Ill. App. 3d at 175.

¶ 83   In reversing the judgment of the circuit court in this case, my colleagues adopt the approach taken in *1998 Ford Explorer*, 399 Ill. App. 3d 99, and followed in *Lexus GS 300*, 402 Ill. App. 3d 462, and *1996 Honda Accord*, 404 Ill. App. 3d 174, which rested on the United States Supreme Court's decisions in *Barker v. Wingo*, 407 U.S. 514, *$8,850*, 461 U.S. 555, and *Von Neumann*, 474 U.S. 242. The problem with the majority's approach is that *1998 Ford Explorer*, 399 Ill. App. 3d 99, and the United States Supreme Court decisions on which it is based all involved "as applied" constitutional challenges. The judgment of the circuit court under consideration here purported to declare the statutory scheme unconstitutional on its face.

¶ 84   My colleagues are not the first to blur the distinction between "as applied" and facial challenges. While the two doctrines are simple enough to state, their application has been vexing. When and how litigants should be permitted to challenge statutes as facially invalid rather than merely invalid "as applied" is a hotly debated topic both within the United States Supreme Court and among legal scholars. Richard H. Fallon, Jr., *Fact and Fiction about Facial Challenges*, 99 Calif. L. Rev. 915, 917 (2011); Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing*, 113 Harv. L. Rev. 1321 (2000); see Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan. L. Rev. 235 (1994); Alex Kreit, *Making Sense of Facial and As-Applied Challenges*, 18 Wm. & Mary Bill Rts. J. 657 (2010).

¶ 85   The difficulty may lie in the doctrine itself. One commentator has charged that "categorizing constitutional cases into 'facial' and 'as-applied' challenges, and relying on these categories to shape doctrine and inform case outcomes, is an inherently flawed and fundamentally incoherent undertaking." Kreit, *supra*, at 659. Another has lamented that the "distinction between as-applied and facial challenges may confuse more than it illuminates" and argued that the distinction between facial and as-applied challenges should be eliminated altogether. Dorf, *supra*, at 294. But if the doctrine is to be abandoned, that determination

should be made by the United States Supreme Court, which created it. For now, the Court continues to observe the doctrine, and because we follow its precedent when construing the due process clause of our own constitution, it is appropriate that we continue to observe the doctrine as well.

¶ 86 Fortunately, the analytical problems may not be as daunting as the doctrine's detractors may believe. A persuasive argument has been made that in situations not involving overbreadth, a facial challenge is properly understood to be one where a litigant asserts that a constitutional defect inheres in the terms of the statute itself, independent of the statute's application to particular cases. Marc E. Isserles, *Overcoming Overbreadth*: *Facial Challenges and the Valid Rule Requirement*, 48 Am. U. L. Rev. 359, 363-64 (1998). Such challenges have been termed "valid rule" facial challenges in order to distinguish them from the familiar "overbreadth" facial challenges common in first amendment cases.

¶ 87 Unlike an overbreadth challenge, which predicates invalidity on some aggregate number of potentially unconstitutional applications of an otherwise valid rule, a "valid rule" facial challenge is premised on the notion that because of something a statute contains or fails to include, it can never pass constitutional muster. The inclusion of an offending provision or the omission of a provision which constitutional principles require is an inherent and inescapable flaw which renders the law invalid no matter what the circumstances. Isserles, *supra*, at 387.

¶ 88 When the doctrine is viewed in this way, it becomes evident that when the United States Supreme Court spoke in *United States v. Salerno*, 481 U.S. 739 (1987), of a statute being unconstitutional on its face when no set of circumstances exists under which it would be valid, it was not prescribing an application-specific method of determining the law's validity, an approach which *would* be entirely appropriate in an overbreadth challenge. Rather, it was explaining why the statute was invalidated in the first place, namely, because some underlying constitutional doctrine rendered the statutory terms incapable of any constitutional applications. Isserles, *supra*, at 401.

¶ 89 This is certainly how the circuit court in this case understood facial challenges to work. In considering the claimants' procedural due process challenges, it focused on constitutional deficiencies inherent in the statutory scheme itself, as the United States Supreme Court had in *Mathews v. Eldridge*, 424 U.S. 319, and the United States Court of Appeals, Second Circuit, had in *Krimstock v. Kelly*, 306 F.3d 40. The particular circumstances of the specific claimants whose vehicles are subject to forfeiture in these proceedings played no role in the court's determination that the challenged statutory provisions did not comport with procedural due process requirements.

¶ 90 In seeking review of the circuit court's judgment, the State urged this court to conceptualize the case in a fundamentally different way. It asserted that the United States Supreme Court decisions in *Barker v. Wingo*, 407 U.S. 514, *$8,850*, 461 U.S. 555, and *Von Neumann*, 474 U.S. 242, provided the more appropriate analytical framework. Consistent with the "as applied" nature of those cases, the State's argument went beyond the provisions of the statutory scheme itself and also took into account the particular circumstances of the claimants in this case. It asked us to consider such things as the recourse which these

claimants had available to them, the actual delays these claimants faced, whether these litigants failed to vigorously assert their rights, and what, if any, prejudice they suffered as the result of delays in the forfeiture proceedings.

¶ 91    As reflected earlier in this special concurrence, my colleagues were persuaded by the State's arguments and adopted this line of reasoning in reversing the circuit court's judgment. Their analysis is clearly not limited to consideration of whether there are flaws inherent in the statutory scheme. Rather, they expressly consider how the statute operated in these particular cases (*supra* ¶¶ 49-55), concluding that "claimants' due process rights" were satisfied "with respect to the vehicles in question" because, under the *Barker v. Wingo* test (which, as I have pointed out, is applicable to as-applied due process challenges), there was no need for an earlier hearing and "the balance of the *Barker* factors weighs heavily in favor of the State and indicates that there was no unreasonable delay in *these particular proceedings.*" (Emphasis added.) *Supra* ¶ 71.

¶ 92    I do not take issue with the majority's conclusion in that regard and agree that under the line of authority to which *Barker* belongs, claimants suffered no infringement of their due process rights as a result of the actual procedures followed in the specific circumstances of the particular cases which gave rise to this appeal. The problem is that while that conclusion would resolve the issue of whether Illinois' vehicle-forfeiture provisions were unconstitutional *as applied* to claimants, that is not the question presented by the circuit court's judgment. The question we have been asked to resolve in this litigation is whether the vehicle-forfeiture provisions themselves are inherently flawed because they fail to include procedural protections which due process demands. That inquiry falls squarely within the "valid rule" facial challenge paradigm.

¶ 93    While acknowledging that we are asked to resolve a facial challenge to the statutory scheme, the majority nevertheless insists that it is "completely appropriate" to assess "whether [the] particular claimants were denied a meaningful hearing at a meaningful time under the circumstances of this case." *Supra* ¶ 67. With all due respect, the majority is mistaken. My colleagues' reliance on specific applications of a statute to assess its validity might make sense if this case involved an overbreadth challenge, but it is entirely at odds with the structure of a "valid rule" facial challenge, which is the type of challenge advanced here. As one commentator has explained,

> "Application-specific constitutional scrutiny is the characteristic feature of overbreadth methodology. But a valid rule challenge must be resolved through a different method primarily because a valid rule challenge seeks to disprove precisely that which the overbreadth challenge necessarily assumes: that the rule as written and construed is facially valid under the relevant constitutional standards. *Salerno*'s facial challenge methodology, as employed by the Court in *Salerno*, directs a court faced with a valid rule facial challenge to evaluate the challenged statute against the relevant constitutional doctrine, independent of the statute's application to particular cases. A court entertaining a facial challenge under *Salerno* is not concerned with the details of particular statutory applications, and instead focuses on the content of the statutory terms to assess their consistency with constitutional requirements. In other words, a valid rule facial challenge is a challenge that 'puts into issue an explicit rule

of law, as formulated by the legislature or the court, and involves the facts only insofar as it is necessary to establish that the rule served as a basis of decision.' Again, 'no set of circumstances' is a descriptive claim about a facially invalid rule of law, and not an application-by-application method of proof." Isserles, *supra*, at 403-04.

By failing to recognize this distinction, the majority's disposition creates unnecessary confusion in the law.

¶ 94    The majority's approach would be defensible if it were of the opinion that claimants' argument is, in reality, more in the nature of an "as applied" challenge. While the majority questions the propriety of recharacterizing the claimants' argument, there is support under the law and in the record for doing so.

¶ 95    The United States Supreme Court has accepted the view that what ultimately defines the nature of the challenge, *i.e.*, whether it is facial or as applied, is the remedy requested by the party challenging the law. Catherine Gage O'Grady, *The Role of Speculation in Facial Challenges*, 53 Ariz. L. Rev. 867, 872 (2011). In an "as applied" challenge, a plaintiff protests against how an enactment was applied in the particular context in which the plaintiff acted or proposed to act, and seeks to enjoin the objectionable enforcement of the enactment against himself, while a successful facial attack voids the enactment in its entirety and in all applications. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008).

¶ 96    In this case, claimants' real objective is to prevent these particular forfeiture proceedings from going forward and to secure return of the vehicles. They have no particular interest in challenging the law except as it pertains to their particular cases, the circumstances of which they have invoked in support of their arguments. This is reflected in the initial challenge to the forfeiture proceedings filed in case No. 07-MR-1126, the oldest of the proceedings before us. It prayed simply for an order "requiring the petition to rescind be set for hearing as the statutory scheme violates due process," and that "the vehicles *** be returned to the complainant."

¶ 97    During the October 15, 2008, hearing on the motion to dismiss the proceedings, the circuit court opined that this request was "a little short of saying the Court should hereby declare whatever section of the Illinois motor vehicle statute to be unconstitutional." At the circuit court's urging, the pleadings were subsequently modified and the arguments refined, but at a hearing held the following February, the circuit court continued to express uncertainty about the nature of the challenge and whether claimants' motion might be better viewed as posing an as-applied rather than a facial challenge to the law. That the claimants' attack on the statute was in the nature of a facial challenge is therefore not as clear as the majority would have it.

¶ 98    I note, moreover, that to the extent the parties themselves characterized this case as involving a facial rather than an "as applied" challenge, the label is not what matters. See *Doe v. Reed*, 561 U.S.___, ___, 130 S. Ct. 2811, 2817 (2010). When faced with the question of whether a statute is unconstitutional on its face or merely as applied, we are not automatically bound by the parties' conception of the nature of a statute's constitutional infirmity. See *Citizens United v. Federal Election Comm'n*, 558 U.S.___, ___, 130 S. Ct.

876, 893 (2010) ("the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge," and the "parties cannot enter into a stipulation that prevents the Court from considering certain remedies if those remedies are necessary to resolve a claim that has been preserved"). We may make our own assessment.

¶ 99    Jurisprudential considerations also weigh in favor of approaching claimants' efforts to recover the vehicles as presenting an "as-applied" challenge to the pertinent statutes. The United States Supreme Court has pointed out that "although the occasional case requires us to entertain a facial challenge in order to vindicate a party's right not to be bound by an unconstitutional statute [citation], we neither want nor need to provide relief to nonparties when a narrower remedy will fully protect the litigants." *United States v. National Treasury Employees Union*, 513 U.S. 454, 477-78 (1995). When confronting a statute's constitutional flaw, the Court attempts to limit the solution to the problem, preferring to enjoin only the statute's unconstitutional applications while leaving the others in force, or to sever its problematic portions while leaving the remainder intact. That is motivated by various considerations, including the recognition that because a finding of unconstitutionality frustrates the intent of the elected representatives of the people, courts should strive to avoid nullifying more of a legislature's work than is necessary. *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 329 (2006).

¶ 100   We therefore have the authority, perhaps even the obligation, to view the litigation here as presenting an "as-applied" challenge. If we take that approach, the solution proffered by the majority, a solution which ultimately employs an "as applied" analysis and relies on precedent involving other "as applied" cases, is both appropriate and correct.

¶ 101   Well, almost correct. In the course of developing its argument, the majority perpetuates a misconception expressed by the circuit court. It is that evaluation of a statute's constitutionality is somehow an all or nothing proposition, *i.e.*, that if a statutory mechanism is alleged to lack some element which the Constitution requires, we are powerless to formulate a remedy to cure the omission and must, instead, reject the statutory scheme in full as void from its inception. *Supra* ¶ 13.

¶ 102   In taking this position, the majority ignores a large and established body of case law governing constitutional adjudication. Contrary to the majority's view, courts have considerable flexibility when confronted with a statute's constitutional flaws. See, *e.g.*, *United States v. Booker*, 543 U.S. 220 (2005); David H. Gans, *Severability and Judicial Lawmaking*, 76 Geo.Wash. L. Rev. 639 (2008). Generally speaking, a court should endeavor to limit the solution to the problem, "prefer[ring] *** to enjoin only the statute's unconstitutional applications of a statute while leaving other applications in force [citation], or to sever its problematic portions while leaving the remainder intact [citation]." *Ayotte*, 546 U.S. at 329. Accordingly, as noted earlier in this separate opinion, a court will strive to avoid nullifying more of a legislature's work than is necessary. The "normal rule" is that "partial, rather than facial, invalidation is the required course," such that a "statute may ... be declared invalid to the extent that it reaches too far, but otherwise left intact." (Internal quotation marks omitted.) *Id.* We also restrain ourselves from "rewrit[ing] state law to conform it to

-29-

constitutional requirements" even as we strive to salvage it. (Internal quotation marks omitted.) *Id.* It does not follow, however, that we may not confine the state to action within constitutional limits. See *Richards v. Lavelle*, 620 F.2d 144, 149 (7th Cir. 1980). "After finding an application or portion of a statute unconstitutional, we must next ask: Would the legislature have preferred what is left of its statute to no statute at all?" *Ayotte*, 546 U.S. at 330. If the answer to that question is yes, a court may craft a judicial remedy so long as it is faithful to the legislature's intent. *Id.* at 331.

¶ 103      A recent example of that may be found in the precedent of our own court. In *In re Adoption of L.T.M.*, 214 Ill. 2d 60 (2005), an indigent father in a proceeding governed by the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2008)) complained that he was denied equal protection of the law because the Act did not authorize appointment of counsel to assist him under circumstances when appointed counsel would have been available to a similarly situated parent in a proceeding governed by the Juvenile Court Act of 1987 (705 ILCS 405/1-1 *et seq.* (West 2008)). Concluding that the disparate treatment served no compelling state interest, our court found the father's constitutional challenge to be meritorious and that the Adoption Act's failure to provide him with appointed counsel violated principles of equal protection. We then proceeded to the question of remedy. We noted that we could have eliminated the infirmity by removing the availability of appointed counsel for indigents under the Juvenile Court Act, but concluded that such an option would have the effect of nullifying the considered judgment of the legislature. We therefore held that the better course was to require the state to begin providing appointed counsel to indigent parents who face the loss of parental rights in proceedings under the Adoption Act. And so that is what we ordered, notwithstanding the fact that the Adoption Act itself contained no authority for such appointments. *In re Adoption of L.T.M.*, 214 Ill. 2d at 77-78.

¶ 104      That courts may fashion appropriate measures to remedy omissions in statutory procedures which would otherwise render the statutory scheme unconstitutional was not disputed by the State. To the contrary, and as the majority itself correctly points out, the State invoked the availability of alternate remedies in support of its contention that a motion to dismiss under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2008)) was not a proper vehicle for claimants to raise a challenge to the constitutionality of the forfeiture provisions at issue in this case.

¶ 105      My colleagues were entirely right to conclude that claimants' decision to rely on section 2-619(a)(9) did not doom their challenge to the constitutionality of the law. In order to reach that conclusion, however, the majority did not need to address the scope of a court's remedial authority. Our court has considered constitutional challenges to state statutes where those challenges have been brought under section 2-619(a)(9) as well as under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2008)). See *People ex rel. Ryan v. World Church of the Creator*, 198 Ill. 2d 115, 116-17 (2001) (facial validity of Solicitation for Charity Act (225 ILCS 460/0.01 through 23 (West 1998)) raised in a section 2-615 motion to dismiss a complaint filed under the Act); *Mulay v. Mulay*, 225 Ill. 2d 601, 604 (2007) (constitutionality of grandparents visitation statute raised by mother in a section 2-619 motion to dismiss a visitation petition filed by the grandparents of the subject child pursuant to the statute). In so doing, we have not clearly delineated when and under what

circumstances each of these procedural mechanisms may be employed to raise a constitutional challenge to a statute. Perhaps we can be faulted for that, but fortunately for litigants, invoking section 2-619 where section 2-615 should have been employed (or vice versa) is far from fatal. As long as the technical designation has not resulted in prejudice to the opposing party, the court will look beyond how the motion is labeled and consider it on the merits. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004); *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002). There was no prejudice here. Accordingly, even if one believes claimants should have premised their motion on section 2-615 rather than section 2-619, the misdesignation would not, in itself, provide a sufficient basis for resolving the motion or this appeal.

¶ 106    Although they persist in the view that the case law dealing with "as applied" should guide their evaluation of the facial validity of Illinois' vehicle-forfeiture provisions, my colleagues ultimately decide that the standards set forth in *Mathews*, 424 U.S. 319, might be worth a look after all. They insert this discussion as a "parenthetical" (*supra* ¶ 68) when, as I have pointed out, *Mathews* should have been the cornerstone of their analysis if they were intent on viewing the case under the rubric applicable to facial challenges. But it is some consolation that the majority is at least willing to consider whether the result it reaches in the case would be any different under the standards articulated by the United States Supreme Court in *Mathews*.

¶ 107    Having said that, I must also add that I am not as confident as my colleagues that the Illinois law would withstand a facial challenge under the *Mathews* standards. Remember, after all, that we are not writing on an entirely clean slate here. The United States Court of Appeals for the Seventh Circuit evaluated the corresponding provisions of our Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 *et seq.* (West 2004)) in accordance with *Mathews* and, in a unanimous opinion, found them to be constitutionally deficient. See *Smith v. City of Chicago*, 524 F.3d 834 (7th Cir. 2008).

¶ 108    It is true that the Seventh Circuit's decision was subsequently vacated as moot after the parties settled while the case was pending on review in the United States Supreme Court. *Alvarez v. Smith*, 558 U.S. ___, ___, 130 S. Ct. 576, 578 (2009). And it may be true that the Seventh Circuit's opinion in the case is therefore not binding precedent so far as the federal courts are concerned. But a decision by a lower federal court on a question arising under the federal constitution is never binding on us, except to the extent that it may become the law of the case. *People v. Kokoraleis*, 132 Ill. 2d 235, 293 (1989); *People v. Williams*, 161 Ill. 2d 1, 59 (1994). We look to such decisions only to the extent they are persuasive, and it is hard to see how the persuasive value of the Seventh Circuit's reasoning in *Smith* was diminished simply because the parties subsequently agreed to settle rather than pursue further review.

¶ 109    After the panel issued its decision in *Smith*, it circulated the opinion to the full court pursuant to a Seventh Circuit rule in order to determine whether it should be reheard *en banc*. No member of the court voted for *en banc* rehearing. *Smith*, 524 F.3d at 839. While that does not mean that the Seventh Circuit would reach the same conclusion on the merits were the matter presented to it again, it certainly gives one pause.

¶ 110     One thing I doubt the Seventh Circuit would agree with if it were presented with another constitutional challenge to our current forfeiture laws is the majority's assertion that we need not be concerned about the risk of an erroneous deprivation because the seizures in cases like the ones before us occur simultaneously with arrests for aggravated DUI and DWLR "for which the police must have probable cause." *Supra* ¶ 68. What the Seventh Circuit understood, but the majority seems to overlook, is that purpose of a prompt postseizure hearing in this context is not simply to determine whether there was a sufficient basis for the initial decision to seize the vehicle, but to consider the broader question of whether it is appropriate for the vehicle to continue to be held until the forfeiture claim is heard and decided. The circumstances surrounding the arrest of the driver and the warrantless seizure of the vehicle by the police are only part of the inquiry. See *Smith*, 524 F.3d at 838-39.

¶ 111     In any case, the question of whether the vehicle-forfeiture provisions challenged here are facially invalid for failing to require a prompt, postseizure probable cause hearing has become a moot point. Earlier this year, the General Assembly passed legislation which amended the relevant provisions of the Criminal Code of 1961 to require the type of postseizure hearing demanded in this case and authorizing the court to fashion appropriate relief, pending the forfeiture hearing, "after taking into account the respective interests of all known claimants." These provisions take effect January 1, 2012. Our mandate will not issue before that date, meaning that the new provisions will be in effect when this cause is remanded to the circuit court for further proceedings. Though they do not come right out and say it, the majority appears to acknowledge that claimants will be able to avail themselves of those new provisions on remand. This court's pronouncements on the facial validity of the preamendment version of the law will therefore have no effect on what happens next in this litigation or in future vehicle-forfeiture proceedings under the Criminal Code. Legislative action has now rendered the majority's views on the facial validity of the law immaterial and unnecessary. See, *e.g.*, *Pope v. Illinois*, 481 U.S. 497, 501-02 (1987) (Court refrained from ruling on facial validity of statute where intervening legislative action eliminated challenged provision and the defendant's posture in the case would be the same even if the Court agreed that the repealed statute was unconstitutional on its face). Under these circumstances, the most we can or should say is that the pertinent vehicle-forfeiture procedures, as applied to claimants thus far in these proceedings, did not violate claimants' procedural due process rights.

¶ 112     JUSTICE FREEMAN, dissenting:

¶ 113     I respectfully dissent. As the court's opinion explains, the State has cited, as additional authority, the General Assembly's enactment of Public Act 97-544, which amends the Illinois Vehicle Forfeiture Act to provide for a preliminary review of the seizure. Although the new provisions take effect on January 1, 2012, it is unclear what effect the amendments are to have on seizures, such as those at issue here, that predate January 1, 2012. Neither party has provided this court with any argument as to that question, and the court is willing to resolve the case without that input. I disagree with this decision and, therefore, do not join in today's opinion.

¶ 114    This court has held that it will consider " 'a constitutional question only where essential to the disposition of a case, *i.e.*, where the case cannot be determined on other grounds.' " *Beahringer v. Page*, 204 Ill. 2d 363, 370 (2003) (quoting *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 396 (1994)). Nevertheless, both the court's opinion and the specially concurring opinion spend a great deal of time explaining why the Illinois Vehicle Forfeiture Act is constitutional, either facially or as applied in these cases. But if that issue is indeed moot, as Justice Karmeier suggests and the court implies, then it should not be addressed. It is for this reason that I believe further briefing to be necessary.

¶ 115    JUSTICE BURKE joins in this dissent.